## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PRESTRIDGE-HUNT, MEAGAN,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-12-1263-M** |
| | ) | |
| | ) | |
| **OLD CHICAGO RESTAURANT, an** | ) | |
| **Oklahoma corporation; and ADVANCED** | ) | |
| **EMPLOYER SOLUTIONS, L.L.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

_____

Paul A. Ross, OBA #19699
Elizabeth Bowersox, OBA #30494
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439
paul.ross@mcafeetaft.com
elizabeth.bowersox@mcafeetaft.com

August 1, 2014

# TABLE OF CONTENTS

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ...................................... 1

**BRIEF IN SUPPORT** .................................................................................. 1

**BACKGROUND** ....................................................................................... 1

**STANDARD OF REVIEW** ........................................................................... 3

**STATEMENT OF UNDISPUTED MATERIAL FACTS** ........................................ 4

**ARGUMENTS AND AUTHORITIES** ............................................................... 7

   **I.   PLAINTIFF'S CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT FAIL AS A MATTER OF LAW.** ............................ 7

   **II.  PLAINTIFF'S CLAIMS OF WRONGFUL TERMINATION FAIL AS A MATTER OF LAW.** ......................................................... 13

   **III. PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAIL AS A MATTER OF LAW.** ............................. 16

   **IV. PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS AS A MATTER OF LAW.** ..................................................... 17

   **V.  PLAINTIFF'S NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW.** . 19

   **VI. PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.** ...................... 22

**CONCLUSION** ........................................................................................ 24

**CERTIFICATE OF SERVICE** ...................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

<u>Adler v. Wal-Mart Stores, Inc.,</u>
144 F.3d 664 (10th Cir. 1998) ..............................................................................3

<u>Atkinson v. Halliburton Co.,</u>
1995 OK 104, 905 P.2d 772..........................................................................14, 15

<u>Barham</u>, 2010 WL 3650684, at *6.............................................................................23

<u>Burk v. K-Mart Corp.,</u>
770 P.2d 24 (Okla. 1989)........................................................................14, 15, 17

<u>Campbell v. Gambro Healthcare, Inc.,</u>
478 F.3d 1282 (10th Cir. 2007) ........................................................................7, 8

<u>Chenoweth v. City of Miami,</u>
2010 OK CV APP 91.............................................................................................20

<u>Consol. Grain & Barge Co. v. Structural Sys., Inc.,</u>
2009 OK 14, 212 P.3d 1168.................................................................................19

<u>Curtis v. Eaglemed,</u>
LLC, Case No. CIV-10-0605-HE, 2011 WL 220001 (W.D. Okla. January 21,
2011) ....................................................................................................................15

<u>Degraw v. Exide Techs.,</u>
744 F. Supp. 2d 1199 (D. Kan. 2010)..................................................................12

<u>Devery Implement Co. v. J.I. Case Co.,</u>
944 F.2d 724 (10th Cir. 1991) ............................................................................18

<u>Diffenderfer v. Aeromet, Inc.,</u>
1993 OK CIV APP 25, 852 P.2d 798 ...................................................................19

<u>Digital Design Grp. Inc. v. Info. Builders, Inc.,</u>
2001 OK 21, 24 P.3d 834.....................................................................................16

<u>Farina v. Compuware Corp.,</u>
256 F. Supp. 2d 1033 (D. Ariz. 2003) .................................................................11

<u>FDIC v. Grant,</u>
8 F. Supp. 2d 1275 (N.D. Okla. 1998).................................................................17

Gabler v. Holder & Smith, Inc.,
   2000 OK CIV APP 107, 11 P.3d 1269 ..................................................................23

Glover v. DCP Midstream GP, LLC,
   549 F. App'x 713 (10th Cir. 2013)......................................................................12

Harrison v. M-D Bldg. Products, Inc.,
   CIV-10-1124-C, 2011 WL 6181383 (W.D. Okla. Dec. 13, 2011) ...................11, 12

Hesser v. Cent. Nat'l Bank & Trust Co. of Enid,
   1998 OK 15, 956 P.2d 864...................................................................................19

Holmes v. Bd. of Cnty. Comm'rs,
   CIV-11-0397-HE, 2013 WL 2368394 (W.D. Okla. May 28, 2013)......................10

Jordan v. Cates,
   1997 OK 9, 935 P.2d 289......................................................................................21

Kruchowski v. Weyerhauser Co.,
   202 P.3d 144 (Okla. 2008)....................................................................................14

Lange v. Showbiz Pizza Time, Inc.,
   12 F. Supp. 2d 1150 (D. Kan. 1998)...............................................................17, 23

McClelland v. CommunityCare HMO, Inc.,
   503 F. App'x 655 (10th Cir. 2012)........................................................................11

Metzler v. Fed. Home Loan Bank of Topeka,
   464 F.3d 1164 (10th Cir. 2006) ..............................................................................8

Miner v. Mid-Am. Door Co.,
   2003 OK CIV APP 32, 68 P.3d 212 ......................................................................23

Mirzaie v. Smith Cogeneration, Inc.,
   1998 OK CIV APP 123, 962 P.2d 678 ..................................................................23

Mondaine v. Am. Drug Stores, Inc.,
   408 F. Supp. 2d 1169 (D. Kan. 2006)...................................................................21

N.H. v. Presbyterian Church,
   1999 OK 88, 998 P.2d. 592, 998 P.2d. 592 ....................................................20, 21

NMP Corp. v. Parametric Tech. Corp.,
   958 F. Supp. 1536 (N.D. Okla. 1997)...................................................................20

Ragsdale v. Wolverine World Wide, Inc.,
   535 U.S. 81 (2002)................................................................................................10

Roberson v. PaineWebber, Inc.,
    2000 OK CIV APP 17, 998 P.2d 193 ....................................................................18

Rosales v. AT&T Info. Sys., Inc.,
    702 F. Supp. 1489 (D. Colo. 1988)......................................................................18

Saint v. Data Exchange,
    145 P.3d 1037 (Okla. 2006)................................................................................14

Schovanec v. Archdiocese of Okla. City,
    2008 OK 70, 188 P.3d 158..................................................................................22

Steffek v. Kingfisher Regional Hospital,
    No. CIV-10-17-R (W.D. Okla. June 4, 2010).......................................................15

Therrien v. Target Corp.,
    No. 06-5110, 216 Fed. Appx. 751 (10th Cir. 2007)..............................................20

Trentadue v. U.S.,
    397 F.3d 840 (10th Cir. 2005) ............................................................................22

Turek v. City of Edmond, Okla.,
    CIV-08-1037-C, 2010 WL 2891698 (W.D. Okla. July 21, 2010) ..........................19

Vice v. Conoco, Inc.,
    150 F.3d 1286 (10th Cir. 1998) ..........................................................................19

**Statutes**

25 Okla. Stat. Ann §1302...........................................................................................13, 14

25 Okla.Stat.Ann. §1901(A) ..........................................................................................14

**Other Authorities**

29 C.F.R. § 825.210 .....................................................................................................12

Family Medical Leave Act, 29 U.S.C. § 2601 et seq.........................................................2

Fed. R. Civ. P. 56(c) ......................................................................................................3

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants CC Ops – Midwest City d/b/a Old Chicago Restaurant ("CC Ops") and Advanced Employer Solutions ("AES") (collectively, "Defendants") respectfully move this Court for summary judgment in their favor on all claims asserted in the present action.  Defendants submit the following brief in support of their motion.

## BRIEF IN SUPPORT

## BACKGROUND

Megan Prestridge-Hunt ("Plaintiff") began her employment at the "Old Chicago" restaurant in Midwest City, Oklahoma in 2006.  Sometime after her employment began, the ownership of the restaurant changed, and Plaintiff became an at-will employee of AES and CC Ops.  In 2008, Plaintiff was promoted to the position of assistant general manager for the restaurant.

In the fall of 2009, Plaintiff notified AES that she was pregnant.  She continued working through January 19, 2010.  However, on January 20, 2010, Plaintiff learned of complications with her pregnancy and was hospitalized.  As a result, her physicians notified her that she would be restricted to bed rest for the remainder of her pregnancy and could not work.  Plaintiff was immediately placed on a leave of absence by AES.

On March 26, 2010, AES Payroll Director Pat Dodd followed up with Plaintiff regarding the status of her leave.  Dodd sent Plaintiff a letter confirming some of the details of her medical leave and reminding Plaintiff that her accrued paid leave had run concurrently with her FMLA leave, and therefore her leave of absence had been unpaid

1

since February 3, 2010. Dodd also reminded Plaintiff that if she desired continued coverage under the company's medical plans, she would need to make arrangements to pay her portion of the various monthly premiums. Plaintiff contends that she received that letter on or around April 9, 2010.

Meanwhile, Plaintiff gave birth on April 4, 2010. However, she was not immediately released to return to work. On April 6 or 7, Pat Dodd called Plaintiff, having not received any word from Plaintiff about her medical insurance or her leave status. Dodd noted that she had been trying to reach Plaintiff without success and reminded her about the need for Plaintiff to pay her portion of the monthly insurance premiums. Despite the call, and despite the letter, Plaintiff failed to keep in contact with her employer about her status or pay her premiums. April 14 came and went without any contact from Plaintiff. On April 20, 2010, several days after Plaintiff's twelve-week FMLA entitlement had expired, AES sent Plaintiff a letter notifying her that her employment had been terminated effective April 15, 2010. Plaintiff was not released by her doctor to work in any capacity until May 18, 2010, almost a month after her leave had expired and the termination letter was sent to Plaintiff.

Nearly two years later, Plaintiff brought the present action alleging that her termination was unlawful. Plaintiff alleged at least ten distinct causes of action, but each of them is premised upon the notion that AES interfered with Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). But, as the undisputed material facts will show, Plaintiff admits that (1) she was granted twelve full weeks of leave before she was terminated, and (2) she was not able to return to work in any

2

capacity until May 18, 2010 – over four weeks after her FMLA leave expired.  Therefore,

Plaintiff received everything she was entitled to receive under the FMLA.  Many of the

other claims fail because they are simply not cognizable in the present situation.

Defendants are entitled to summary judgment on all claims.

## **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue is 'genuine' if there is

sufficient evidence on each side so that a rational trier of fact could resolve the issue

either way.  An issue of fact is 'material' if under the substantive law it is essential to the

proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th

Cir. 1998) (internal citations omitted).

Where, as here, a party seeking summary judgment will not bear the ultimate

burden of persuasion at trial, it "need not negate the nonmovant's claim" in its motion.

*Id*. at 671. Rather, in moving for summary disposition, Defendants may satisfy their

obligations "simply by pointing out to the court a lack of evidence for the nonmovant on

an essential element of the nonmovant's claim."  *Id.* (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986)).  After such a showing, the nonmoving party must "set forth

specific facts" by reference to admissible evidence from which a rational trier of fact

could find in its favor.  Adler, 144 F.3d at 671.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff was hired on September 24, 2006 to work as hostess manager at the Old Chicago Restaurant in Midwest City, Oklahoma.  Ex. 1, Pl. Dep. 54:15-19.

2.      When Plaintiff first became employed, the operator of the restaurant was an entity called VinZant Group.   Ultimately the restaurant was sold to CC Ops, and AES administrated HR and payroll for CC Ops.  Ex. 1, Pl. Dep. 52:17-55:21.

3.      In June of 2007, Plaintiff became an at-will employee of AES.   Ex. 2, New Hire/Rehire Master Record.

4.      In the fall of 2009, Plaintiff learned that she was pregnant.  Ex. 1, Pl. Dep. 98:1-3.

5.      On January 20, 2010, Plaintiff's treating physicians identified complications in her pregnancy and restricted her to bed rest for the remainder of her pregnancy.  Ex. 1 Pl. Dep. 103:7-16, Ex. 3, Short Term Disability Claim.

6.      Plaintiff went on leave of absence, and her last day worked was January 19, 2010. Ex. 1, Pl. Dep. 94:10-14.

7.      Plaintiff contends that she was regularly scheduled off work on Wednesdays and Thursdays of each week, with a regular work schedule of ten-hour shifts on Fridays through Tuesdays.  Ex. 1, Pl. Dep. 135:12-20.

8.      Plaintiff's first day of FMLA-protected leave was Friday, January 22, 2010.  Ex. 1, Pl. Dep. 129:7-130:15; 138:12-23; Ex. 7, Handwritten Calendar.

9.      Plaintiff's first week of FMLA-protected leave ended seven days later, on Thursday January 28, 2010.  Ex. 1, Pl. Dep. 138:12-139:24; Ex. 7, Handwritten Calendar.

10.     Each subsequent week of FMLA-protected leave ended on the following Thursday, with the twelfth week expiring on April 15, 2010.  Ex. 1, Pl. Dep. 139:25-141:8; Ex. 7, Handwritten Calendar.

11.     On March 26, 2010, Pat Dodd, payroll director of AES, sent Plaintiff a letter that stated:

> Your request for Family and Medical Leave Act (FMLA) was approved for your continuous absences from January 20, 2010 through April 14, 2010. Please be advised that the 12 weeks of FMLA run concurrently with any paid time that you receive. . . . It is recommended that you monitor your remaining FMLA entitlement on an on-going basis. You are responsible for communicating with your supervisor and Human Resources regarding you absences . . . . Should you require additional leave past April 14, 2010, you must contact me as soon as you are aware of needed additional leave. . . .

Ex. 4, March 26 letter.

12.     The letter also informed Plaintiff that

> While you are on an approved company leave of absence, there are changes in how your insurance benefits are continued.  In order for your life and medical benefits to continue with no lapse in coverage, you will need to reimburse the Company the applicable premium amounts for the coverage you elect.

The letter then quoted the amount of "FMLA covered – EE premiums only" that Plaintiff would owe monthly during her unpaid leave.  Ex. 4, March 26 letter.

13.     Plaintiff did not pay her portion of her health insurance premiums while she was on unpaid FMLA leave.  Ex. 1, Pl. Dep. 112:15-113:11.

14.     On April 20, 2010, AES sent a letter to plaintiff, informing plaintiff that she was terminated effective April 15, 2010, after exhausting her available leave under the FMLA without contacting her employer and requesting more leave.  Ex. 5, April 20 Letter.

15.    Plaintiff was not released by her doctor to return to work in any capacity until May 18, 2010.  Ex. 1, Pl. Dep. 106:12-107:5; 114:16-19, 164:2-18; Ex. 6, Medical Statement – Ability to Work form.

16.    Plaintiff did not file a charge of discrimination with the Equal Employment Opportunity Commission, the Oklahoma Human Rights Commission, or any other government agency alleging "sex" discrimination or any other discrimination.  Ex. 1, Pl. Dep. 21:25-23:4.

17.    Plaintiff never heard anyone make disparaging or inappropriate comments about her gender, her pregnancy, or her need for medical leave.  Ex. 1, Pl. Dep. 72:25-73:25; 77:5-8, 18-25, 78:1-8.

18.    Plaintiff believes the reason she was terminated was the fact that her FMLA leave had been exhausted and she could not then return to work.  Ex. 1, Pl. Dep. 124:8-12.

19.    Plaintiff believes she was terminated because of her gender because "a man can't get pregnant," because "I'm female and I was terminated" and because "a man cannot claim FMLA under medical conditions."  Ex. 1, Pl. Dep. 146:20-147:10.

20.    Plaintiff cannot identify any written employment contract between her and AES or CC Ops.  The only agreement Plaintiff ever signed was between her and the previous ownership group.  Ex. 1, Pl. Dep. 147:25-150:7.

21.    Plaintiff had no relationship with AES or CC Ops other than an employer-employee relationship.  Ex. 1, Pl. Dep. 156:24-157:1.

## ARGUMENTS AND AUTHORITIES

I.  **PLAINTIFF'S CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT FAIL AS A MATTER OF LAW.**

Plaintiff describes her first "cause of action" as "Violations of the Family Medical Leave Act."  See Complaint at p. 4.  Generally speaking, courts recognize two types of claims under the FMLA: (1) a claim alleging interference with a plaintiff's statutory rights, and (2) a claim alleging that a plaintiff suffered retaliation after exercising rights under the FMLA.  Plaintiff does not articulate in her Complaint[1] which of the recognized types of FMLA claims she is attempting to assert.

However, it is important to note that a "retaliation" claim is more properly brought when an employee has been restored to employment after protected leave under the act and subsequently suffers some adverse employment action.  See, e.g., Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287-88 (10th Cir. 2007).  Here, it is undisputed that Plaintiff never returned to work from her protected leave.  In fact, Plaintiff was not released to return to work in any capacity until almost a month after her leave expired and she had been terminated.  (Fact Nos. 14-15.)  Therefore, Plaintiff cannot assert a claim of retaliation, and this motion will analyze Plaintiff's FMLA claims as if they are intended to be "interference" claims.

To prevail on an interference theory, a plaintiff must show: "(1) that he [or she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with

---

[1]  Plaintiff initiated this action via Petition with the District Court of Oklahoma County, Oklahoma, and Defendants subsequently removed to this Court.  All references to Plaintiff's "Complaint" refer to Plaintiff's Petition as originally filed in state court.

his [or her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1180 (10th Cir. 2006).  To satisfy the second element of an interference claim, the employee must show that "she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." <u>Campbell v. Gambro Healthcare, Inc.</u>, 478 F.3d 1282, 1287 (10th Cir. 2007).  The undisputed material facts establish as a matter of law that Plaintiff is unable to prove the second element of her claim.

Plaintiff will attempt to argue that AES interfered with her exercise of FMLA rights in three ways: (1) by terminating her employment prior to the exercise of twelve weeks of leave (Plaintiff's Petition at ¶¶12-13), (2) by failing to reinstate Plaintiff to her former position or an equivalent position (<u>Id.</u> at ¶14), and (3) by requiring that Plaintiff pay her portion of the monthly healthcare insurance premiums (<u>Id.</u> at ¶15).  But in view of the undisputed material facts, there is no genuine issue with respect to any of these allegations.

First, it is undisputed that Plaintiff received twelve weeks of FMLA protected leave.  Plaintiff's last day of work was January 19, 2010, a Tuesday.  (Fact No. 6.) Plaintiff was hospitalized on Wednesday, January 20, 2010.  But, Plaintiff contends that she was regularly scheduled off work on Wednesdays and Thursdays of each week, with a regular work schedule of ten-hour shifts on Fridays through Tuesdays.  (Fact No. 7.) Therefore, she contends that her first day of FMLA protected leave was Friday, January 22, 2010.  (Fact No. 8.)  Assuming that to be correct, Plaintiff's first week of FMLA-

protected leave ended, at the latest, on Thursday, January 28.  (Fact No. 9.)  Plaintiff remained off work continuously, and each subsequent week of FMLA-protected leave ended on the following Thursday.  Therefore, the twelfth week of FMLA-protected leave expired on Thursday, April 15, 2010.  (Fact No. 10.)  AES did not terminate Plaintiff's employment until April 20, 2010.  (Fact No. 14.)  In a letter bearing that date, AES informed Plaintiff that, because it had not heard from her, it was terminating her employment effective April 15, 2010 – the very day her twelfth week of protected leave expired.  (Fact Nos. 10 and 14.)   This course of events resulted in her receiving exactly twelve weeks of protected leave, as required by the statute.

Plaintiff's other pleadings in this case indicate that she plans to make an argument of semantics.  She will argue that a termination "effective" April 15, 2010, somehow means that the last day, April 15, 2010, should not be counted in the twelve week calculation.  But this argument fails for a number of reasons.  First, it is clear from the context of the letter that April 15, 2010 was meant to be included in the calculation.  Second, even if it were not counted, that day would have been a scheduled day off for Plaintiff.  Because she was regularly scheduled off on Wednesdays and Thursdays, her twelfth "work week" would have concluded on Tuesday, April 8, 2010.  Third, the letter terminating her employment was not mailed until April 20, 2010, a date that is without question outside of the twelve week limit.  For each of those reasons, there is no "genuine" dispute about whether or not Plaintiff received twelve full weeks of FMLA protected leave.

Furthermore, even if Plaintiff could show a genuine dispute about whether April 15, 2010 should be counted as the last day of her leave, the dispute is immaterial. Whether or not it was counted, Plaintiff was not able to return to work on April 15, 2010. (Fact No. 15.)  And, the courts are clear that the FMLA provides no relief for an alleged interference with leave rights unless the employee was actually prejudiced by the denial. See, e.g., Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (to prevail on a claim of interference under the FMLA, "an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights.  Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation.") (emphasis added).  See also Holmes v. Bd. of Cnty. Comm'rs, CIV-11-0397-HE, 2013 WL 2368394 at *5 (W.D. Okla. May 28, 2013) ("A plaintiff must show some prejudice resulting from the alleged violation.") (internal citations and alterations omitted).  "To determine whether damages and equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different—considering, for example, when the employee would have returned to work after taking leave." Ragsdale, 535 U.S. at 91.

Moreover, Plaintiff suffered no damages from any supposed miscalculation; her leave was unpaid at the point of her termination, so she lost no pay.  Plaintiff lost no benefits as a result of the one-day difference, because she failed to pay her portion of the monthly premiums.  Even if Defendants had miscalculated the days Plaintiff's leave started and ended, she still received the leave to which she was entitled and suffered no prejudice or damages from any alleged misstatement of those days.

10

Simply put, Plaintiff received all the leave to which she was entitled under the FMLA, and was not prevented from taking 12 weeks of leave.  See McClelland v. CommunityCare HMO, Inc., 503 F. App'x 655, 658 (10th Cir. 2012) (holding employer "is not obligated to provide more than the statutorily-required amount of FMLA leave"); see also Harrison v. M-D Bldg. Products, Inc., CIV-10-1124-C, 2011 WL 6181383 at *2 (W.D. Okla. Dec. 13, 2011) ("Plaintiff has failed to satisfy the second element, as the undisputed evidence demonstrates she received all the leave to which she was entitled under the FMLA").  Because Plaintiff was granted 12 full weeks of FMLA leave, summary judgment is appropriate. See Farina v. Compuware Corp., 256 F. Supp. 2d 1033, 1057  (D. Ariz. 2003) (Holding that employer's misstatement regarding end date for Plaintiff's FMLA leave did not prejudice Plaintiff's rights under the FMLA when Plaintiff did not attempt to return to work after leave actually expired because "Plaintiff fully exercised her FMLA rights notwithstanding Defendant's actions.").

Second, Plaintiff was not entitled to reinstatement to her position, or to any equivalent position, because she was not able to return to work when her FMLA-protected leave expired.  Plaintiff was not released by her physician to return to work in any capacity until May 18, 2010, almost a month after her leave expired.  (Fact No. 15.) Plaintiff's statutory right to reinstatement under the FMLA ended the moment her leave expired and she was unable to return to work.  "The FMLA permits an employer to terminate an employee who cannot return to work after her twelve weeks of leave have expired."  McClelland v. CommunityCare HMO, Inc., 503 F. App'x 655, 659 (10th Cir.

11

2012). "[T]he right to reinstatement under FMLA expires when FMLA leave expires." Degraw v. Exide Techs., 744 F. Supp. 2d 1199, 1215 (D. Kan. 2010).

Here, when Defendants wrote the letter to inform Plaintiff of her termination on April 20, which was more than 12 weeks past the first day of her leave no matter whether January 20 or 22 is used as the first day of leave, Plaintiff had not attempted to return to work.   Indeed, she could not have done so, as she was not cleared by her doctor to return to work until May 18, 2010.   "In short, because [s]he received the leave due to [her] under the FMLA, but was unable to return to work at the end of this leave, [her] interference claim fails."   Glover v. DCP Midstream GP, LLC, 549 F. App'x 713, 715 (10th Cir. 2013).   See also Harrison v. M-D Bldg. Products, Inc., CIV-10-1124-C, 2011 WL 6181383 at *2 (W.D. Okla. Dec. 13, 2011) ("It was only after Plaintiff's refusal to return to work following the additional time granted by Defendant that she was ultimately terminated. Simply put, no reasonable jury could determine that Plaintiff was prevented from exercising her rights under the FMLA").

Finally, it is indisputable that AES was within its rights to require Plaintiff to pay her portion of the monthly health insurance premiums.   The FMLA regulations specifically authorize an employer to collect the employee's portion of a health plan premium from the employee while the employee is on unpaid FMLA leave.   29 C.F.R. § 825.210.   There is no evidence that Defendants terminated Plaintiff because of her failure to pay her portion of the premiums.   First, it is unlikely Defendants would be motivated to end Plaintiff's employment simply because Plaintiff chose not to continue her insurance benefits.   Second, Plaintiff herself testified that she believed she was

12

terminated once she failed to return to work when her FMLA leave was exhausted, not because she did not pay her premiums:

> Q      Okay.   Do you think they terminated you because you didn't pay your premiums?
>
> A      <u>Do I think that?</u>  <u>No.</u>  I think that they -- I exhausted my FMLA and they said, "No.  You're done."

Ex. 1, Pl. Dep. 124:8-12 (emphasis added).  Instead of being motivation for termination, it is likely that the failure to pay for her health insurance premiums, along with her failure to communicate with her employer about her status or potential return to work, simply reinforced the notion that Plaintiff had no intention to return to work after her leave.

Because Plaintiff cannot establish this essential element of her claim, judgment should be granted in favor of AES and CC Ops with respect to Plaintiff's claim of alleged FMLA interference.

## II.    <u>PLAINTIFF'S CLAIMS OF WRONGFUL TERMINATION FAIL AS A MATTER OF LAW.</u>

Plaintiff's second cause of action is a common-law claim for alleged "wrongful termination" under Oklahoma "public policy."  <u>See</u> Complaint at pp. 4-5.  Specifically, Plaintiff alleges in her Complaint that Defendants terminated Plaintiff's employment based on her "sex" because it terminated her during maternity leave.

It appears that Plaintiff bases this cause of action on 25 Okla. Stat. Ann §1302, the prohibitions on employment discrimination contained within the Oklahoma Anti-Discrimination Act.   In fact, the OADA does prohibit Oklahoma employers from discriminating against individuals "because of race, color, religion, sex, national origin,

age, or handicap." Id.  However, under the version of the OADA that existed at the time Plaintiff was terminated, the only private right of action was for so-called "handicap" discrimination.   25 Okla.Stat.Ann. §1901(A).   Subsequently, through Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989) and its progeny, courts permitted members of other protected classes identified in the OADA, but for which no private right of action is contained in the statute (e.g., victims of sex discrimination) to bring an action in tort premised upon the public policy set forth in the OADA.  See Saint v. Data Exchange, 145 P.3d 1037 (Okla. 2006) and Kruchowski v. Weyerhauser Co., 202 P.3d 144 (Okla. 2008).

But, an action under the OADA always had a prerequisite.  As an express condition to a cause of action premised upon the OADA, an employee must file an administrative charge of discrimination with the EEOC or another administrative agency:

> If a charge for discrimination in employment on the basis of handicap is filed under the [OADA] . . . , the charging party may commence an action for redress against any person who is alleged to have discriminated against the charging party and against any person named as respondent in the charge, such action to be commenced in the district court of this state for the county in which the unlawful employment practice is alleged to have been committed.

Id. (emp. added).

And, because the OADA serves as the foundational statement of Oklahoma "public policy" for Burk tort claims, the administrative charge requirements in the statute still apply to those claims.  See Atkinson v. Halliburton Co., 1995 OK 104, ¶¶ 26-27, 905 P.2d 772, 775-76 (holding that a plaintiff may pursue a Burk tort claim for handicap discrimination in violation of the public policy set forth in the OADA, but concluding that the administrative exhaustion required by the OADA is equally applicable to any

14

such tort claims).  In <u>Atkinson</u>, the Oklahoma Supreme Court held that despite the use of the word "may" in the statute, the timely filing of a complaint is <u>mandatory</u>.  According to the Court, "[t]he language of the statute, when taken as a whole, leads us to conclude that the use of the term 'may' was not intended to allow plaintiff to completely ignore the statutory scheme."  <u>Id.</u> at ¶19.

In fact, this Court has routinely dismissed <u>Burk</u> claims premised upon the OADA for failure to timely exhaust these administrative remedies.  <u>See</u>, <u>e.g.</u>, <u>Curtis v. Eaglemed, LLC</u>, Case No. CIV-10-0605-HE, 2011 WL 220001 (W.D. Okla. January 21, 2011); and <u>Steffek v. Kingfisher Regional Hospital</u>, No. CIV-10-17-R (W.D. Okla.  June 4, 2010); Ex. 8.  In <u>Steffek</u>, the Honorable David Russell dismissed a <u>Burk</u> "public policy" claim based upon alleged age discrimination, concluding as follows:

> A prerequisite to pursuit of a <u>Burk</u> tort claim for employment discharge in violation of public policy is the exhaustion of the procedural requirements of the . . . OADA [citing <u>Atkinson</u>, <u>infra</u>].  One of the OADA's procedural requirements is that the individual file a written sworn complaint as to the discriminatory practice with the Oklahoma Human Rights Commission within 180 days after the discriminatory act occurs.  Okla. Stat. tit. 25, § 1502.  Plaintiff failed to comply with Section 1502, *i.e.*, to timely exhaust her administrative remedies.  Accordingly, she failed to state a claim on which relief can be granted.

<u>Id.</u> at *1-2.

Here, it is undisputed that Plaintiff <u>never</u> filed a charge of discrimination with any agency.  (Fact No. 16)  As a result, her "public policy" claim must be dismissed.

Even if Plaintiff could assert such a claim, there is no basis for a reasonable jury to conclude that her sex was the basis of this termination.  Plaintiff has produced *no evidence* that her termination was based on her gender or was in violation of any of

public policy goal.   Plaintiff admits that no one ever made any disparaging or inappropriate remarks about her gender, her pregnancy, or her need for leave.  (Fact No. 17).  In fact, even Plaintiff has an explanation for her termination that does not involve her sex.  Plaintiff testified that she believed the reason she was terminated was the fact that her FMLA leave had been exhausted.  (Fact No. 18)  Plaintiff's only support for her sex discrimination claim is her subjective conclusion and her erroneous understanding of the FMLA:  "Because I'm a female and I was terminated" and because "[a] man cannot claim FMLA under medical conditions."   (Fact No. 19.)   Defendants are entitled to summary judgment on this claim.

## III.   PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAIL AS A MATTER OF LAW.

Plaintiff next attempts to assert purported "causes of action" for breach of contract and "bad faith breach of the implied covenant of good faith and fair dealing."  See Complaint at pp. 5-6.  But the undisputed evidence makes clear that no contract ever existed between Plaintiff and Defendants.  Plaintiff was merely an at-will employee of the Defendants.  (Fact Nos. 3, 20.)  Therefore, summary judgment is appropriate on both of these claims.

To recover for a breach of contract under Oklahoma law, the plaintiff must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach.  Digital Design Grp. Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843.  Plaintiff has identified no contract.  In fact, Plaintiff admits that she was an at-will employee of AES.   (Fact Nos. 3, 20.)  And she admits that any contract she may

have signed regarding her employment would have been with the previous ownership group, not AES or CC Ops.  (Fact Nos. 20.)  Plaintiff admits that she does not even know if AES ever saw such a contract.  See Complaint at pp. 4-5.  As Plaintiff cannot identify or produce a contract that Defendants have allegedly breached, Defendants are entitled to judgment on Plaintiff's breach of contract claim.

For the same reason, Defendants are entitled to summary judgment on Plaintiff's breach of the duty of good faith claim, as the existence of a contract is a necessary element of this cause of action as well.  Moreover, "Courts have rejected 'good faith and fair dealing' claims in the employment context regardless of whether an express or implied employment contract exists."  Lange v. Showbiz Pizza Time, Inc., 12 F. Supp. 2d 1150, 1156 (D. Kan. 1998).  See also Burk v. K-Mart Corp., 1989 OK 22, ¶ 4, 770 P.2d 24, 26 ("We reject the implication of an obligation of good faith and fair dealing in every employment-at-will contract.").

## IV.   PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS AS A MATTER OF LAW.

Plaintiff's next cause of action is premised in an alleged "breach of fiduciary duty."  But because no fiduciary relationship existed between Defendants and Plaintiff, this claim also fails as a matter of law.

Under Oklahoma law, a breach-of-fiduciary-duty claim has three elements: (1) the existence of a fiduciary relationship giving rise to a fiduciary duty; (2) breach of that duty; and (3) damages.  FDIC v. Grant, 8 F. Supp. 2d. 1275, 1299 (N.D. Okla. 1998);

OUJI Civil No. 26.1.   Oklahoma courts have not expressly defined "fiduciary relationship," but have held that a fiduciary relationship exists where

> [t]here is a confidence reposed on one side and resulting dominion and influence on the other. The relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation.

Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 729 (10th Cir. 1991) (quoting Lowrance v. Patton, 710 P.2d 108, 112 (Okla. 1985)). See also Roberson v. PaineWebber, Inc., 2000 OK CIV APP 17, ¶ 10, 998 P.2d 193, 199 ("A fiduciary relationship exists where a special [confidence] has been placed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.")

But ordinary at-will employment does not create a fiduciary relationship between employer and employee.  See, e.g., Rosales v. AT&T Info. Sys., Inc., 702 F. Supp. 1489, 1499 (D. Colo. 1988) (dismissing breach of fiduciary claim by employee against former employer where there were no allegations to support the assertion that the employee "justifiably reposed confidence in his employer.")  Again, it is undisputed that Plaintiff was employed at-will.  (Fact Nos. 3, 20.)  And, it is undisputed that Plaintiff had no relationship with Defendants other than an employer-employee relationship.  (Fact Nos. 21.)  Plaintiff cannot establish any fiduciary relationship, and her claim fails as a matter of law.

## V.   PLAINTIFF'S NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Complaint next alleges a series of claims premised in supposed "negligence" by Defendants.  See Complaint at pp. 6-8.  But they are all based upon the accusation that Plaintiff's FMLA rights were violated when her employment was terminated.  Under Oklahoma law, in order to prevail on a negligence claim, one must prove the existence of a duty on the part of the defendant to protect the plaintiff from injury, and a violation of that duty which proximately caused the injury.  Consol. Grain & Barge Co. v. Structural Sys., Inc., 2009 OK 14, n.8, 212 P.3d 1168, 1171.

Duty is the first element for any negligence claim; if no duty exists, there can be no claim for negligence.  See Hesser v. Cent. Nat'l Bank & Trust Co. of Enid, 1998 OK 15, ¶ 12, 956 P.2d 864, 867 (citing Grover v. Superior Welding, Inc., 1995 OK 14, ¶ 5, 893 P.2d 500, 502).  Plaintiff cannot identify a common law duty on the part of Defendants recognized by Oklahoma law.  The only duty to provide employees with medical leave for their health condition stems from the statutorily created rights of the FMLA.  Thus, Plaintiff's negligence-related claims fail.

In the past, Oklahoma courts have rejected a cause of action for "negligent termination."  Diffenderfer v. Aeromet, Inc., 1993 OK CIV APP 25, ¶ 10, 852 P.2d 798. Similarly, in Vice v. Conoco, Inc., 150 F.3d 1286, 1292 (10th Cir. 1998), the Tenth Circuit Court of Appeals rejected an employee's claim that the employer had negligently investigated a claim of harassment. See also Turek v. City of Edmond, Okla., CIV-08-1037-C, 2010 WL 2891698 at *2 (W.D. Okla. July 21, 2010) (finding Oklahoma law did

not recognize a duty or negligence cause of action for failure to protect against wrongful termination).  As in those cases, there can be no claim of negligence here where there is no common law duty to provide an employee with leave time or to prevent Plaintiff's termination.

Furthermore, Oklahoma does not recognize separate causes of action for "gross negligence" or "negligent infliction of emotional distress."  See NMP Corp. v. Parametric Tech. Corp., 958 F. Supp. 1536, 1546 (N.D. Okla. 1997) ("Under Oklahoma law gross negligence is defined as the lack of slight care and diligence. The Oklahoma Supreme Court has expounded upon this statutory definition, stating that gross negligence requires the intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty, or property of another. Thus, gross negligence is the same as a negligence claim, differing only as to the degree"); see also Chenoweth v. City of Miami, 2010 OK CV APP 91, ¶ 13, 240 P.3d 1080, (citing Lockhart v. Loosen, 1997 OK 103, ¶16, 943 P.2d 1074, 1081) (holding that "negligent infliction of emotional distress" is not a stand alone tort, "but is in effect the tort of negligence.").  Again, no claim for negligence exists under these circumstances.

Defendants are also entitled to summary judgment on Plaintiff's "negligent supervision" claim.  Although, in extremely limited instances, Oklahoma does recognize a cause of action for negligent supervision, that theory of recovery is available only where the employer may not be vicariously liable for the allegedly tortious acts of its employee.  See, e.g., N.H. v. Presbyterian Church, 1999 OK 88, ¶ 20; 998 P.2d. 592; Therrien v. Target Corp., No. 06-5110, 216 Fed. Appx. 751, 754 (10th Cir. 2007)

(citation omitted) (stating that, "In Oklahoma, this claim is only available if an employer's vicarious liability is not established"). Under the FMLA, only "employers" may be held liable, not individuals who have no corporate role beyond a managerial position. See, e.g., Mondaine v. Am. Drug Stores, Inc., 408 F. Supp. 2d 1169, 1186 (D. Kan. 2006) (holding manager not individually liable under FMLA because he had no corporate role beyond his management position). Rather, the employer will be liable for the manager's acts under the FMLA. Because here Defendants will be liable for the acts of its employees, there is no basis for a negligent hiring or supervision claim. Moreover, Plaintiff has produced no evidence tending to show that Defendants were negligent in training or supervising their employees with regard to FMLA policies.

Similarly, there can be no liability for a "negligent hiring" under these facts. See Jordan v. Cates, 1997 OK 9, ¶ 14, 935 P.2d 289, 293 ("[T]he theory of negligent hiring and retention is available in a nonvicarious liability case or in a case where vicarious liability has not been established.") Even if negligent hiring applied, for a plaintiff to succeed in a negligent hiring, retention, or supervision claim, he must show that the employer "had reason to believe that the [employee] would create an undue risk of harm to others." N.H. v. Presbyterian Church, 1999 OK 88, ¶ 20; 998 P.2d. 592, 600. Though Plaintiff likely alleges that Defendants should be liable under this theory for hiring Pat Dodd, Plaintiff has not shown any evidence that Dodd did anything wrong, let alone that Defendants had any particular reason to believe that Dodd would create an "undue risk of harm" to Plaintiff or any other employee. Defendants are entitled to summary judgment under this theory as well.

Finally, as explained above, there is no cause of action in Oklahoma for "negligent training" or "negligent staffing." These are really just negligence claims, and as explained above, no negligence claim has been made because no common-law duty exists to provide an employee with leave time. For these reasons, Defendants are entitled to summary judgment as a matter of law on all of Plaintiff's negligence based claims.

## VI.   PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.

Finally, Plaintiff's last cause of action is a claim for intentional infliction of emotional distress. This claim fails because Plaintiff has adduced no evidence in support of such a claim. To make a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show that: 1) the defendant acted intentionally or recklessly; 2) defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused Plaintiff emotional distress; and 4) the emotional distress was severe. Schovanec v. Archdiocese of Okla. City, 2008 OK 70, ¶ 47, 188 P.3d 158, 175 (quoting Computer Publ'ns, Inc. v. Welton, 2002 OK 50, ¶ 7, 49 P.3d 732, 735). Under Oklahoma law, it is the trial court's responsibility to assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. U.S., 397 F.3d 840, 856 n.7 (10th Cir. 2005)) (applying Oklahoma law).

Regarding the second element of Plaintiff's *prima facie* case, extreme and outrageous conduct, Plaintiff claims only that terminating her following medical leave was extreme and outrageous. However even "[w]orkplace discrimination or harassment

rarely rises to the level of extreme and outrageous conduct…."  Barham, 2010 WL 3650684, at *6 (emphasis added); Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, ¶ 64, 11 P.3d 1269, 1280.  Plaintiff's conclusory allegations, even if taken as true, fail to rise to the requisite level of extreme and outrageous conduct necessary to state a plausible claim to relief.  Cf. Mirzaie v. Smith Cogeneration, Inc., 1998 OK CIV APP 123, ¶ 19, 962 P.2d 678, 682-683 (upholding the trial court's dismissal of the plaintiff's emotional distress claim where the defendant's conduct, including making derogatory sexual remarks about the plaintiff; calling the plaintiff at 3:00 a.m. and browbeating him for hours; loudly and publicly telling the plaintiff that he could not sit with the defendant based upon his dress; not allowing the plaintiff to take a day off after the birth of the plaintiff's son; causing the plaintiff severe headaches due to lack of sleep and job stress; and terminating the plaintiff two hours before his scheduled wedding, was not extreme and outrageous); Miner v. Mid-Am. Door Co., 2003 OK CIV APP 32, ¶¶ 40-42, 68 P.3d 212, 223-24 (affirming the trial court's award of summary judgment where the defendant employer's knowledge of and failure to remedy a "hostile environment" and "retaliatory discharge", even if true, was not extreme and outrageous conduct); Lange v. Showbiz Pizza Time, Inc., 12 F. Supp. 2d 1150, 1157 (D. Kan. 1998) ("Even if defendant's decision to terminate plaintiff was driven by an unlawful motive, such as plaintiff's attempt to exercise his rights under the FMLA, defendant's conduct is not extreme or outrageous.")

       The facts Plaintiff points to in support of this claim fail to rise to the level of "extreme and outrageous conduct."  Nor has Plaintiff shown evidence that she has in fact

suffered extreme emotional distress.  Defendants are entitled to summary judgment on this claim as well.

## **CONCLUSION**

The undisputed facts show that Plaintiff was granted all the leave to which she was entitled. She was not prevented from taking FMLA leave or required to return to work before her leave time expired.  Instead, she was terminated when her leave time was exhausted and she did not (and could not) return to work with a release in hand.  Because the undisputed facts show that Defendants' actions did not violate the law, Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted,

/s/Elizabeth Bowersox

Paul A. Ross, OBA #19699
Elizabeth Bowersox, OBA #30494
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439
paul.ross@mcafeetaft.com
elizabeth.bowersox@mcafeetaft.com

**ATTORNEY FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of August 2014, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to any ECF registrants for this case.

Raphael T. Glapion
Raphael T. Glapion, P.C.
P.O. Box 10786
Midwest City, OK  73140-1786
rtglapion@myoklahomacounsel.com
**ATTORNEY FOR PLAINTIFF**

/s/Elizabeth Bowersox

25